**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICE R.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 21-cv-06485** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Patrice R. ("Claimant") moves to reverse or remand the final decision of the Commissioner of Social Security's ("Commissioner") denial of Claimant's application for a period of disability and Disability Insurance Benefits ("DIBs"). (Dckt. #14). The Commissioner responds, (Dckt. #19), asking this Court to grant summary judgment and uphold the decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner is denied and the Commissioner's motion for summary judgment is granted.

**I.    BACKGROUND**

**A.    Procedural History**

Claimant, who was forty-two years old at the onset of her alleged disability, is a former accounting clerk supervisor and office manager who filed an application for DIBs arising from fibromyalgia, spinal stenosis in her cervical region, depression, and regurgitated heart valves.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name.

(Administrative Record ("R") 57). Claimant's application was denied initially and upon reconsideration. On January 30, 2018, after a hearing, Administrative Law Judge ("ALJ") Jessica Inouye issued a written decision denying Claimant's benefits application. (R. 99-126). The Appeals Council denied review of the ALJ's decision, and Claimant appealed her case to this Court.

On February 5, 2021, this Court reversed the ALJ's decision and remanded the case for further proceedings, finding that the ALJ failed to properly determine Claimant's residual functional capacity ("RFC") and ordered her to restate her reasoning. (R. 2150-69); *see Patrice R. v. Saul*, No. 19 C 1285, 2021 WL 410662 (N.D.Ill. Feb 5, 2021). Specifically, the Court found that the ALJ: (1) failed to properly consider Claimant's obesity at all stages of her decision; (2) did not adequately explain how she accommodated Claimant's fibromyalgia in the RFC, *see* SSR 12-2p; and (3) failed to adequately explain her assessment of Claimant's subjective complaints of her symptoms. *See Patrice R.*, 2021 WL 410662, at *6-8.

On March 25, 2021, the Appeals Council vacated the Commissioner's final decision and remanded the case back to the ALJ for further administrative proceedings. (R. 2172). While this disability claim was pending, Claimant filed a subsequent claim for DIBs on February 25, 2019, alleging disability beginning January 31, 2018, due to the same impairments, plus migraines, and nerve palsy in her right eye. (R. 2200). That claim was likewise denied initially and upon reconsideration and proceeded to a hearing in front of a different ALJ. Prior to reaching the decision stage on the new claim, ALJ Inouye consolidated both claims, associated the evidence, and held a combined supplemental hearing on July 22, 2021, at which Claimant and a vocational expert ("VE") testified. The ALJ again denied benefits in a written decision (the "Decision") on September 27, 2021. (R. 2056-2080). The Appeals Council did not discretionally review the

finding within sixty days, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §416.1484(a), (c). This action followed.

### B.     The Social Security Administration Standard to Recover Benefits

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118 at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered to be disabled, and the analysis concludes. If the listing is not met, the ALJ proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id*. If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

### C.    The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits for a second time. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of February 10, 2014 through her date last insured of December 31, 2018. (R. 2059). At step two, the ALJ determined that Claimant suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the right and left shoulders, osteoarthritis of the bilateral knees, idiopathic neuropathy, migraine headaches, obesity, fibromyalgia, depressive

4

disorder, and anxiety disorder. (*Id*.). The ALJ also considered Claimant's other impairments such as mitral prolapse, hypertension, obstructive sleep apnea, asthma, cardiac complaints, abdominal impairments, vision issues, and pain in her extremities but found those to be non-severe. (R. 2059-62).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Commissioner's listed impairments, including listings 1.15 ("spine-nerve root"), 1.16 ("lumbar spinal stenosis"), 1.17 (surgery-weight bearing joint"), or 1.18 ("abnormality of a major joint"). (R. 2062-63). The ALJ further determined that Claimant's idiopathic neuropathy and migraines did not medically equal listings 11.14 ("peripheral neuropathy") or 11.02 ("epilepsy"). (R. 2063). The ALJ found that Claimant's fibromyalgia did not medically equal a listing, either individually or in combination with another impairment. (*Id*.). In addition, the ALJ determined that Claimant's obesity did not contribute to a degree of impairment which would meet or medically equal one of the listings. (R. 2064).

Finally, the ALJ found Claimant's mental impairments, considered singly and in combination, did not meet or medically equal listings 12.04 ("depressive disorders") or 12.06 ("anxiety and obsessive-compulsive disorders"). (*Id*.). The ALJ assessed that Claimant had a mild limitation in her ability to understand, remember, or apply information, as well as interact with others and that Claimant was moderately limited in her ability to concentrate, persist, or maintain pace as well as adapt and manage herself. (R. 2064-65).

Before turning to step four, the ALJ determined that Claimant had the residual functional capacity ("RFC"):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb
> ladders, ropes, or scaffolds; occasionally climb ramps/stairs; occasionally balance, stoop,

kneel, crouch, crawl and reach overhead bilaterally; frequently reach forward and laterally, bilaterally; frequently perform bilateral gross and fine manipulations (handling, fingering and feeling); and should work in an indoor temperature-controlled work environment and avoid exposure to temperature extremes or pulmonary irritants. The claimant should avoid exposure to vibrations of work surfaces or tools and avoid exposure to hazards such as unprotected heights or moving dangerous machinery. The claimant may not work in loud environments and should be limited to moderate or quieter noise levels. The claimant can learn, understand, remember and carry out simple work instructions in a routine work environment and make simple work-related decisions, but should not have hourly timed tasks or fixed production rates, and should not work on a fast-paced assembly machine that the claimant does not control. The claimant is able to work at a more moderate paced work where the pace is not controlled by a machine and that has end-of-day goals. She can tolerate occasional work-related interactions with the general public but should not engage in direct face-to-face, public or customer service work. She can tolerate occasional work interactions with coworkers, with no teamwork or tandem tasks. She can tolerate a typical unskilled work environment supervision, where the supervisor or designee introduces the work tasks during an introductory period and then after the introductory period, there is occasional work-related interaction with the supervisor. She is able to attend to and concentrate on tasks in two-hour increments throughout the typical workday.

(R. 2065-66).

At step four, the ALJ concluded Claimant could not perform her past work as a supervisor or office manager. (R. 2078). Finally, the ALJ found at step five that jobs existed in significant numbers in the national economy that Claimant could perform, including in the representative positions of assembler (68,000 nationally-available jobs); inspector (37,000 jobs); and final assembler (11,000 jobs). Accordingly, the ALJ once again found Claimant was not disabled from February 10, 2014, through December 31, 2018, the date last insured. (R. 2079).

## II.     STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## III. ANALYSIS

Claimant urges this Court to reverse and remand the ALJ's Decision, arguing that the ALJ did not properly comply with this Court's remand because she: (1) "again failed to properly factor in the effects of [Claimant's] fibromyalgia on her ability to sustain both exertional and non-exertional work functions;" (2) failed to explain how Claimant's obesity factored into the RFC; and (3) "failed to articulate proper reasons for her rejection of [Claimant's] subjective statements." (Dckt. #14 at 7). Additionally, Claimant argues that the ALJ improperly rejected

treating source opinions and did not accommodate all of Claimant's mental impairments in the RFC. (*Id*.). The Court disagrees with each contention and therefore affirms.

### A.     The Court's instructions on remand regarding the RFC.

Again, in its February 4, 2021 decision, the Court remanded this case and instructed the ALJ to restate her reasons for the RFC by specifically: (1) reassessing Claimant's subjective statements regarding her symptoms; (2) accounting for Claimant's obesity according to SSR 02-1p (now 19-2p);[2] (3) re-evaluating Claimant's pain and fibromyalgia by applying SSR 12-2p; and (4) re-stating the reasons for the RFC. *Patrice R.*, 2021 WL 410662, at *9.

To recap, "[t]he RFC is an assessment of what work-related activities the claimant can perform despite [her] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a claimant's RFC, the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (emphasis added); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

### B.     The ALJ complied with the Court's remand order and formed an RFC that is supported by substantial evidence.

Claimant's first three allegations of error by the ALJ implicate this Court's prior remand order. For the reasons that follow, the Court agrees with the Commissioner that the ALJ's

---

[2] The Court's remand order instructed the ALJ to assess Claimant's obesity under SSR 02-1p. (R. 2056). That SSR was replaced by SSR 19-2p on May 20, 2019. SSR 19-2p, 2019 WL 2374244 at * 1.

revised determination of Claimant's RFC adequately discussed her obesity, fibromyalgia, and subjective assertions about her symptoms.

### 1. The ALJ's assessment of Claimant's fibromyalgia complied with SSR 12-2p.

The Court instructed the ALJ to explain why Claimant's fibromyalgia symptoms and pain did not require a non-exertional restriction by considering her ailment under SSR 12-2p. *Patrice R.*, 2021 WL 410662 at *8. Claimant now alleges that the ALJ "again failed to properly factor in the effects of Plaintiff's fibromyalgia on her ability to sustain both exertional and non-exertional work functions." (Dckt. #14 at 7). The Court disagrees.

SSR 12-2p "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment ("MDI") of fibromyalgia." SSR 12-2p, 2012 WL 3104869 at *1. A claimant must put forth evidence that a licensed physician reviewed her medical history, conducted a physical exam, and diagnosed her with fibromyalgia. *Id*. at *2. Then, upon review, an ALJ may find a person suffers from the medically determinable impairment of fibromyalgia if the record shows each of the following: (1) a history of widespread pain that persisted for at least three months; (2) at least eleven positive tender points found bilaterally and both above and below the waist; and (3) evidence that other disorders that could cause the fibromyalgia symptoms or signs were excluded. *Id*. at *3; *see also Paula K. v. Saul*, CIVIL No. 1:20cv318, 2021 WL 2802575, *5-6 (N.D.Ind. July 6, 2021).

If fibromyalgia is found to be an MDI, it is then considered in the ALJ's sequential evaluation process. First, the ALJ must determine if the claimant's fibromyalgia meets or medically equals a listing individually or in combination with at least one other MDI. SSR 12-2p, 2012 WL 3104869 at *6. If no listing is met or equaled, the ALJ must assess the claimant's history of fibromyalgia and reported symptom severity in their subsequent findings. *Id*. at *5-6.

As to the RFC, SSR 12-2p specifies that exertional and non-exertional limitations may be required, and that "[s]ome may have environmental restrictions, which are also non-exertional." *Id*.

Here, the ALJ determined that Claimant's fibromyalgia was a severe impairment. She then complied with the Court's direction to examine Claimant's fibromyalgia pursuant to SSR 12-2p. First, at step three, the ALJ found that Claimant's fibromyalgia did not meet or medically equal a listing either individually or in combination with another impairment. (R. 2063 (citing SSR 12-2p)). In doing so, the ALJ incorporated nearly all of the discussion in her 2018 decision regarding Claimant's fibromyalgia into the Decision, including her conclusion that Claimant's obesity "likely contributes to her fatigue and ambulatory deficits." (*Id*. (citing R. 778-818, 1767-1829, 1909-58)). Additionally, the ALJ weighed the results of Claimant's treatment exams in 2017 and 2018:

> The later treatment records indicate ongoing symptoms of fibromyalgia. On January 10, 2017, she was unable to wear a shoulder sling due to fibromyalgia concerns. She displayed pain and swelling along her biceps [and] deltoid muscles as well as right wrist. On December 14, 2018, the claimant complained of ongoing bodily pain, for which she took cannabis. Her neurologist recommended a trial of facet injections or facet ablation to address the pain. Though there is no evidence that other conditions have been ruled out as the possible cause of the claimant's symptoms, the undersigned gives the claimant the benefit of the doubt and finds she has fibromyalgia . . . which has been accommodated with the physical and postural limitations adopted herein.

(R. 2068) (citing R. 2556, 5002-07).

Second, the ALJ scrutinized the requisite factors by finding, for example, that Claimant: (1) complained of fatigue since at least December 2011, (*Id*. (citing R. 478-545)); (2) demonstrated 18/18 fibromyalgia tender points in a July 2012 physical examination, where the physician found her symptoms consistent with fibromyalgia rather than myofascial pain syndrome, (*Id*. (citing, *e.g.*, R. 708-77)); (3) was referred to a pain specialist in 2013 because

there was "no rheumatologic evidence of any inflammatory connective tissue diseases or inflammatory arthritis," (*Id*. (citing R 570-632)); and (4) was found in October 2015 to suffer from "fibromyalgia and chronic pain syndrome, with severe, generalized pain despite trying almost all medications." (*Id*. (citing R. 1438-39)). Ultimately, the ALJ concluded that:

> [t]hough there is no evidence that other conditions have been ruled out as the possible cause of the claimant's symptoms, the undersigned gives the claimant the benefit of the doubt and finds she has fibromyalgia. Although this neither meets or medically equals a listing, either by itself or in combination with another impairment (SSR 12-2p), [it] has been accommodated with the physical and postural limitations adopted herein.

(*Id*.).

Furthermore, the ALJ included additional non-exertional limitations in the new RFC. (R. 2065-66). In particular, the ALJ's Decision expanded on the limitations included in the 2018 decision and provided that:

> [Claimant] can never climb ladders, ropes or scaffolds; occasionally climb ramps [or] stairs; occasionally balance, stoop, kneel, crouch, crawl, and reach overhead bilaterally; frequently reach forward laterally, bilaterally; frequently perform bilateral gross and fine manipulations (handling, fingering and feeling); should work in an indoor temperature-controlled work environment and avoid exposure to temperature extremes or pulmonary irritants. The claimant should avoid exposure to vibrations of work surfaces or tools and . . . may not work in loud environments and should be limited to moderate or quieter noise levels.

(R. 2065-66).

Despite this, Claimant asserts that additional non-exertional limitations in the RFC inadequately account for her fibromyalgia symptoms by inappropriately relying on the absence of objective fibromyalgia testing, rather than Claimant's subjective symptoms. (Dckt. #14 at 9-10 (citing *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) and *Gebauer v. Saul*, 801 Fed.Appx 404, 409 (7th Cir. 2020)). The Commissioner disagrees, pointing out that the ALJ requested "*observations* of functional deficits," rather than "a recitation of [Claimant's] *reports*" and that "the ALJ reasonably concluded that if pain or fatigue interfered with [Claimant's]

11

concentration to the extent she alleged, some medical provider would have observed that at some point in the 8,000 page record." (Dckt. #20 at 4) (emphasis in original). According to the Commissioner, the ALJ adequately discussed and accommodated Claimant's fibromyalgia symptoms in the RFC. (Dckt. #20 at 4-6). The Court agrees.

Courts will not disturb the ALJ's RFC where the Claimant does not specifically identify how it fails to accommodate limitations stemming from her fibromyalgia. *See, e.g., Weaver v. Berryhill*, 746 Fed.Appx. 574, 579 (7th Cir. 2018) (no error where the claimant fails to identify any evidence of combined effects of impairments that would justify additional RFC limitations); *Richards v. Berryhill*, 743 Fed.Appx. 26, 30 (7th Cir. 2018) ("[P]ointing to various diagnoses and complaints and saying that they might hinder [Claimant] is insufficient to establish the existence of a functional limitation."); *Ivair M. v. Berryhill*, No. 18 C 3884, 2019 WL 2085139 at *4 (N.D.Ill. May 13, 2019) ("Instead of pointing to any specific errors in the RFC, Plaintiff recites [her] diagnosis, treatment, and complaints. But this does not establish work-related limitations or show that the ALJ should have included additional limitations in the RFC.").

Furthermore, the ALJ "consider[ed] the longitudinal record of fibromyalgia," and accommodated her demonstrated symptoms. *Gebauer*, 801 Fed.Appx. at 410 (citing SSR 12-2P(VI)(D)). Moreover, even though the ALJ requested some form of objective fibromyalgia test results at the hearing, she did not focus or rely solely on testing when discussing Claimant's fibromyalgia in her decision. Instead, the ALJ discussed Claimant's fibromyalgia symptoms, subjective statements regarding her pain, and, as required by SSR 12-2p, acknowledged an objective exam referenced eighteen out of eighteen tender points in July 2012. (R. 2068). But that did not end the inquiry – the ALJ relied on the opinions of the state agency consulting physicians and adopted exertional and non-exertional limitations she felt accommodated

Claimant's fibromyalgia which were supported by the record. (R. 2073-74); *Gebauer*, 801 Fed.Appx. at 409-10 (ALJ permitted to rely on medical opinions when assessing the severity of fibromyalgia symptoms) (citing 20 C.F.R. §404.1529(c)(2) ("[E]vidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms.")). The ALJ's reasoning is therefore supported by substantial evidence and she complied with the Court's remand order. *Gebauer*, 801 Fed.Appx. at 410; *see also Kleven v. Colvin*, 675 Fed.Appx. 608, 611 (7th Cir. 2011) (ALJ analysis appropriate where they compare opinion statements, medical findings, and claimant's subjective statements); *Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021) ("The ALJ weighed all of the evidence before him and made a permissible decision to give more weight" to results and opinions supported by the record as a whole).

### 2. The ALJ properly assessed Claimant's obesity under SSR 19-2p.

This Court ordered the ALJ on remand to evaluate Claimant's obesity at step three, as well as the combined effect caused by Claimant's obesity and all of her impairments, with "greater care." *Patrice R.*, 2021 WL 410662 at *7. Claimant now asserts that the ALJ ignored this order when she "relied upon improper inferences to dismiss the impact of [Claimant's] obesity, and insisted, without support or explanation, that any effects were accommodated." (Dckt. #14 at 10). Claimant alleges the ALJ erred when she made a boilerplate statement that Claimant's obesity was accommodated at step three and in the RFC. (*Id*. at 10-11). The Court finds, however, that the ALJ adequately discussed Claimant's obesity.

SSR 19-2p "provides guidance on how we establish that a person has a medically determinable impairment of obesity and how we evaluate obesity in disability claims." Policy Interpretation Ruling Titles II and XVI: Evaluating Cases Involving Obesity, 2019 WL 2374244, *1. Although "obesity is no longer a standalone disabling impairment, the ALJ must still

consider its impact when evaluating the severity of other impairments." *Robinson v. Kijakazi*, Case No. 21-CV-238-SCD, 2022 WL 443923 at *4 (E.D.Wis. Feb. 14, 2022), *quoting Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018). "[T]he combined effects of obesity with another impairment may be greater than the effects of each of the impairments considered separately." SSR 19-2p, 2019 WL 2374244 at *2. Under SSR 19-2p, the ALJ must also "consider the limiting effects of obesity when assessing a person's RFC" and will explain how their conclusions were reached. *Id*. at *12.

Nonetheless, even if an ALJ fails to adequately account for a claimant's obesity's limiting effects in their review, such error is harmless when the claimant "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ, [or] explain how her obesity exacerbated her underlying impairments." *Shumaker v. Colvin*, 632 Fed.Appx. 861, 867 (7th Cir. 2015); *see also Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006) (ALJ's error harmless where claimant "failed to specify how her obesity further impaired her ability to work"); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (same); *Robinson*, 2022 WL 443923 at *4 ("To the extent the ALJ erred in evaluating obesity, that error is harmless because [claimant] does not explain how [her] obesity, in combination with [her] other impairments, impacted [her] ability to work.").

The ALJ's examination of Claimant's obesity in her Decision stands in stark contrast to her analysis in the 2018 decision. In particular, the ALJ only mentioned Claimant's obesity three times in her 2018 decision: (1) when she found it to be a severe impairment without explanation; (2) in the context of Claimant's fibromyalgia; and (3) in assigning partial weight to a state agency consultative examiner. (R. 104, 112, 115). On remand, the ALJ properly considered Claimant's severe impairment of obesity in crafting the RFC. (R. 2067-68). The ALJ first

14

explained that medical records showed Claimant was counseled on exercise and food modifications to combat her obesity as early as March 11, 2015. (R. 2067 (citing R. 4403)). The ALJ further noted that Claimant attended Amita Health Weight Loss Solutions on April 2, 2019, whose providers recommended "nutrition, exercise, behavior modification and attendance at related classes;" none of Claimant's physicians ever recommended "aggressive procedures such as bariatric surgery, but [that she] was given conservative measures such as diet and exercise." (*Id.* (citing R. 4952-5051)).

Furthermore, the ALJ discussed Claimant's obesity pursuant to SSR 19-2p at step three by providing examples of how obesity could interplay with Claimant's other impairments, while further noting it is not a listed impairment and did not combine with other impairments to meet a listing. (R. 2064). The ALJ later expanded on her reasoning in the RFC discussion:

> Regarding obesity, the treatment records indicate that [Claimant] has been counseled on exercise and food modifications as early as March 11, 2015. On April 2, 2019, shortly after the date last insured, [Claimant] received care at Amita Health Weight Loss Solutions. Her recommended treatment included nutrition, exercise, behavior modification and attendance at related classes. At this point, [Claimant] weighed about 210 pounds, which equates to a Body Mass Index (BMI) of about 36.1. During the period at issue, her lowest weight was 140, and her desired weight was 145. Finally . . . the evidence indicates that [Claimant] was not recommended for aggressive procedures such as bariatric surgery, but was given routine, conservative measures such as diet and exercise. This impairment has been accounted for in the RFC with occasional postural activities and the sedentary exertional range.

(R. 2067-68) (internal citations omitted). Moreover, the ALJ concluded that the record did not show her obesity "worsen[ed] significantly or cause[d] any disabling impairments." (R. 2073).

In this regard, the ALJ's discussion of Claimant's obesity was neither "perfunctory" nor "conclusory," as Claimant suggests. (Dckt. #14 at 11). Rather, the ALJ discussed Claimant's obesity at each relevant step of the Second Decision. (E.g., R. 2064, 2067-68). "[T]he ALJ *did* consider Claimant's obesity, concluded it was a severe impairment, and analyzed the effect of

that impairment on her residual functional capacity by referencing the [SSR] guidance for

obesity." *Shumaker*, 632 Fed.Appx. at 867 (emphasis in original). As such, the ALJ

accommodated this Court's remand order and complied with SSR 19-2p. *See* SSR 19-2p, 2019

WL 2374244 at *4.

Finally, contrary to Claimant's contention, the ALJ was not required to summon forth a

medical expert "to consider the combined effects of obesity and *all* of [Claimant's] other

impairments." (Dckt. #14 at 11-12) (emphasis in original); *see Shumaker*, 632 Fed.Appx. at 867;

*Prochaska*, 454 F.3d at 736-37; *Skarbek*, 390 F.3d at 504. Rather, it was Claimant's burden to

put forth evidence that she is disabled. 20 C.F.R. 404.1512(a); *Summers v. Berryhill*, 864 F.3d

523, 527 (7th Cir. 2017); *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281 at *13 (N.D.Ill.

Dec. 19, 2019) ("Mr. M merely ticks off activities and abilities that *might* be limited by obesity.

This is not enough: it was Mr. M's burden to explain how obesity *actually* affected his

functioning.") (emphasis in original). Nowhere in the long history of these proceedings or in the

voluminous record has Claimant pointed to specific evidence the ALJ did not consider regarding

her obesity. If such evidence existed, Claimant certainly would have pointed it out, especially

considering the Court's prior remand. *See Brenda L. v. Saul*, 392 F.Supp.3d 858, 866 (N.D.Ill.

2019) ("If there were more evidence regarding Plaintiff's migraines in the record, her attorney

would have cited it."). Claimant did not do so, so if there was any error in not calling a medical

expert – and it is the Court's view that there was none – it was harmless. *See Shumaker*, 632

Fed.Appx. at 867; *Prochaska*, 454 F.3d at 736-37; *Skarbek*, 390 F.3d at 504.

### 3. The ALJ's assessment of Claimant's symptom testimony and activities of daily living is supported by substantial evidence.

The Court also instructed the ALJ to re-assess Claimant's subjective statements regarding

her symptoms. Specifically, the Court asked the ALJ to "explain more carefully how she

evaluated Claimant's [activities of daily living] and draw some link between them, the symptom evaluation, and the RFC." *Patrice R.*, 2021 WL 410662, at *8. Claimant now contends that the ALJ erred by rejecting her subjective statements regarding her symptoms. Specifically, according to Claimant, the ALJ again "failed to explain how any of [her] basic, sporadic activities would translate into an ability to sustain full time competitive work." (Dckt. #14 at 12-13). The Court disagrees.

It is well-settled that any challenge to the ALJ's symptom evaluation faces a high bar, as the Court "will not overturn the ALJ's credibility finding unless it is 'patently wrong,' meaning it lacks any explanation or support in the record." *Lisa C. v. Kijakazi*, No. 20-cv-5173, 2023 WL 3436400 at *11 (N.D.Ill. May 12, 2023), *quoting Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). Although the Seventh Circuit has "cautioned" ALJs not to equate activities of daily living ("ADLs") with "the rigorous demands of the workplace," *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016), "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of [her] impairments was credible or exaggerated." *Id.*, *quoting Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Moreover, an ALJ must consider all of the evidence in the record, including ADLs in considering the veracity of Claimant's allegations of limitations. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("In determining credibility an ALJ must consider several factors, including the claimant's daily activities"); *John P. v. Saul*, No. 2:19CV0004, 2019 WL 4072118 at *12 (N.D.Ind. Aug. 28, 2019) ("An ALJ must consider a claimant's activities of daily living when she assesses a claimant's subjective allegations.") (citing SSR 16-3p, 2017 WL 5180304 at *7); 20 C.F.R. §1529(c)(3).

Here, the ALJ considered Claimant's statements regarding her symptoms and activities of ADLs. For example, the ALJ highlighted that, in 2017 and 2018, Claimant could handle "light stuff," such as house chores, despite her pain. (R. 2067). According to the ALJ, Claimant's hearing testimony that her husband did most of the chores, (R. 2126), contradicted her earlier statements to the consultative examiners that she was able to care for her children, take at-home courses in medical billing, bathe independently, do light shopping, travel, pay bills, sit, stand, walk, carry up to twenty pounds, and do house chores at her own pace. (R. 1161-65, 1182). Overall, the ALJ found Claimant's ADLs were inconsistent with her claim for disability and did not render her incapable of "sedentary work with appropriate restrictions." (R. 2073).

The ALJ's renewed evaluation of Claimant's subjective symptom statements and ADLs complied with the Court's remand order and is supported by substantial evidence. As the Commissioner points out, the ALJ compared – at length – Claimant's subjective symptoms against the medical record. (R. 2073); (Dckt. #20 at 13). As to Claimant's ADLs, the ALJ provided a direct and well-supported link between the RFC and Claimant's purported symptoms:

> [C]laimant's daily activities are inconsistent with a claim for disability. At her hearing, the claimant testified that her husband did most of the chores, or they did them together. Earlier in the period at issue, however, she stated at her physical consultative examination that she was able to care for her children and do some homeschooling in medical billing. At her consultative examination that same day, the claimant stated she was able to bathe independently, do light shopping, travel, pay bills, sit, stand, walk, carry up to 20 pounds, and do house chores at her own pace. Her husband helped with laundry and garbage pickup. Her subsequent treatment records through the period at issue do not demonstrate any significant worsening in any mental or physical area. Therefore, the undersigned finds that the claimant's medical history does not suggest that she would be incapable of sedentary work with appropriate restrictions.
>
> For these reasons, the claimant's hearing testimony received careful consideration but was ultimately not persuasive. Overall, the evidence is not consistent with the extent of the claimant's allegations. Nevertheless, the undersigned does find that the claimant has limitations consistent with the impairments.

18

(*Id*.) (internal citations omitted). Moreover, the ALJ found Claimant's statements and reports of her ADLs were inconsistent with her history of conservative treatment. (*Id*.). Contrary to Claimant's assertion, "[t]he ALJ did not equate [Claimant's] ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The Court therefore finds no error in this regard.

In sum, the ALJ "provided several valid reasons for rejecting [Claimant's] complaints of disabling limitations, and that decision was not patently wrong." *Lisa C.*, 2023 WL 3436400 at *13, *quoting Kittelson v. Astrue*, 362 Fed.Appx. 553, 557 (7th Cir. 2010) ("The ALJ's adverse credibility finding was not perfect. But it was also not 'patently wrong.'"); *Skarbek*, 390 F.3d at 505 ("This court will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record").

### C. The ALJ adequately assessed the medical opinion evidence

Next, Claimant asserts that the ALJ "[d]ismiss[ed] every single opinion provided by a treating source" – namely Dr. Maramreddy, LCSW Hyman, and APN Novak – without "cogent reasons for doing so." (Dckt. #14 at 13). Claimant's argument lacks merit.

Under the applicable regulations for cases filed prior to March 27, 2017, the ALJ must give a treating source's opinion controlling weight "if it is well-supported and not inconsistent with other substantial evidence." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); *see also* 20 C.F.R. §404.1527(c)(2). When controlling weight is not given, an ALJ must offer "good reasons" for doing so, after considering the "length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed,

and the consistency and supportability of the physician's opinion." *Stage*, 812 F.3d at 1126; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. §404.1527(c). While "an inadequate evaluation of a treating physician's opinion requires remand," *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 Fed.Appx. 738, 740 (7th Cir. 2010)).

For the following reasons, the Court finds that the ALJ's assessment of each of the healthcare practitioners' opinions is supported by substantial evidence.

### 1. Dr. Maramreddy

The ALJ surveyed Dr. Maramreddy's three reports – submitted on May 8, 2016; May 10, 2019; and November 16, 2020 – in support of Claimant's application for benefits. (R. 2075-77). First, the ALJ explained why the May 2016 opinion was speculative and worthy of little weight, specifying that Dr. Maramreddy: (1) based her opinion on a different physician's diagnosis; (2) had not observed claimant for nine months; (3) did not support her opinion with objective medical records from 2015 or 2016; and (4) kept other records which contradicted this opinion. (R. 2075 (citing R. 1440-42)). The ALJ was justified in discounting this report where she found it unsupported by and inconsistent with the record including Dr. Maramreddy's own treatment notes. *See* 20 C.F.R. §404.1527(c)(2), (4); *Pavilicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes"); *Fair v. Saul*, 853 Fed.Appx. 17, 21 (7th Cir. 2021) (same); *see also Givens v. Colvin*, 551 Fed.Appx. 855, 861 (7th Cir. 2013) (ALJ justified in giving little weight to opinion when they articulated two supported reasons for doing so).

The ALJ likewise imputed little weight to Dr. Maramreddy's May 2019 opinion letter because "it includes at least some evidence after the [date last insured], and because it includes no objective medical evidence other than generalities . . . [and] vague conclusions lacking specific support as to the specific work ability" that is limited by an identified symptom. (R. 2076-77 (citing R. 4452-53)). Furthermore, the ALJ supplied "no more than partial weight" to the November 2020 report and noted that the doctor concluded that Claimant's symptoms "'probably' support her argument that she can no longer work . . . 'I cannot say she is totally disabled – refer to rheumatologist.'" (R. 2077 (citing 5730-32)). The ALJ also found that some of the evidence arose after the date last insured, was inconsistent with the evidence (including from Dr. Maramreddy's other notes), contradicted the doctor's other offered opinions in part, and that Dr. Maramreddy had not seen Claimant in more than a year prior to making this opinion. The ALJ's rationale in this regard provides "good reason" to discount Dr. Maramreddy's opinion. *See* 20 C.F.R. §404.1527(d)(2); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Luster*, 358 Fed.Appx. at 740 (unexplained inconsistencies in physician's opinion justify ALJ's decision to discount that opinion); *Pavlicek*, 994 F.3d at 781; *Fair*, 853 Fed.Appx. at 21. Nonetheless, the ALJ adopted some of Dr. Maramreddy's recommended limitations from the November 2020 report into the RFC, including limiting work complexity, pace, and environmental triggers for Claimant's headaches. (R. 2077).

## 2. Licensed Clinical Social Worker Hyman

Next, the ALJ evaluated LCSW Hyman's October 2019 report that diagnosed Claimant with PTSD, anxiety, and chronic pain. (R. 4487-89). The ALJ allocated little weight to the opinion because much of the report was based on evidence after the date last insured, the findings within the report "fail[ed] to indicate how she is aware of some of these limits as they

are not discussed or observed in treatment strongly suggesting Ms. Hyman is reporting the claimant's subjective complaints as her opinion," and because LCSW Hyman's expertise lies in mental, not physical, health. (*Id*.). The ALJ was justified in discounting LCSW Hyman's opinion where – as here – she provided specific reasons supported by the record for doing so. 20 C.F.R. §404.1527(c)(3); *see also Luster*, 358 Fed.Appx. at 740-41 (ALJ justified when they explained that treating physician "merely recorded Luster's complaints about her self-described limitations"); *Marilyn C. v. Kijakazi*, No. 20 CV 1816, 2023 WL 1862988 at *12 (N.D.Ill. Feb. 9, 2023) ("The ALJ's explanation thus considered the regulatory factors to conclude that Dr. Garcia's opinion was not persuasive. That is all that is required.") (internal citation omitted).

### 3. Advanced Practice Nurse Novak

Finally, the ALJ gave partial weight to APN Novak's mental RFC assessment, finding that other mental examinations on file were generally unremarkable and therefore diminished her assessment's overall persuasiveness. (R. 2076 (citing R. 4050-4389)). The ALJ explained that APN Novak did not support her statements with specific findings. (R. 2076). Moreover, APN Novak's opinion included findings from four years prior to meeting Claimant, indicating APN Novak either transcribed Claimant's medical history or her subjective complaints into the assessment. (*Id*.). To reiterate, identifying inconsistencies between the record and a treating physician's offered opinion adequately justifies discounting its conclusions. *See Skarbek*, 390 F.3d at 503 (citing *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000)); *Pavlicek*, 994 F.3d at 781; *Fair*, 853 Fed.Appx. at 21. The ALJ therefore surpassed the low bar of "minimally articulat[ing] [her] reasons for crediting or rejecting" APN Novak's opinion. *Id*.; *Clifford*, 227 F.3d at 870.

Even if the Court were to disagree with any part of the ALJ's assessment of the above opinions, she supplied ample reasons pursuant to the regulatory factors in her analysis, which is all she had to do. *See Moss*, 555 F.3d at 561; 20 C.F.R. §404.1527(c). Moreover, and contrary to Claimant's declarations, the ALJ *did* still consider these opinions, rather than discard them. Her review is therefore not "patently erroneous," so the Court will not upset it. *Stepp*, 795 F.3d at 718.

### D. The mental RFC is supported by substantial evidence.

Lastly, Claimant argues that the ALJ's extensive accommodations for her mental impairments lacked detailed discussion or rationale; that the ALJ "essentially determined the [Claimant] would be capable of performing unskilled work, with limited social interactions;" and that the ALJ did not adequately consider the combined impact of all of Claimant's mental and physical impairments in the RFC. (Dckt. #14 at 14). The Court disagrees.

"[T]he ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the [i]mpact of non-severe impairments requires reversal." *Denton*, 596 F.3d at 423; *Golembiewski*, 322 F.3d at 918. Consequently, it is well-settled that the ALJ must incorporate all limitations arising from a claimant's mental impairments into her RFC, even if those mental impairments are non-severe and the limitations that they impose on the claimant's capabilities are minor. *See, e.g.*, *DeCamp*, 916 F.3d at 675-76; *Yurt v. Colvin*, 758 F.3d 850, 857-59 (7th Cir. 2014).

On remand, the ALJ included the following non-exertional limitations into Claimant's RFC:

> The claimant can learn, understand, remember and carry out simple work instructions in a routine work environment and make simple work-related

decisions, but should not have hourly timed tasks or fixed production rates, and should not work on a fast-paced assembly machine that the claimant does not control. The claimant is able to work at a more moderate paced work where the pace is not controlled by a machine and that has end-of-day goals. She can tolerate occasional work-related interactions with the general public but should not engage in direct face-to-face, public or customer service work. She can tolerate occasional work interactions with coworkers, with no teamwork or tandem tasks. She can tolerate a typical unskilled work environment supervision, where the supervisor or designee introduces the work tasks during an introductory period and then after the introductory period, there is occasional work-related interaction with the supervisor. She is able to attend to and concentrate on tasks in two-hour increments throughout the typical workday.

(R. 2065-66). In coming to this conclusion, the ALJ thoroughly discussed Claimant's mental health history throughout her decision with accompanying citation to the record. (R. 2072-73 (citing, *e.g.*, R. 1190-1201, 1443-51, 1158-66, 1529-36, 1663-75)). Moreover, she considered exam notes and opinions from Ms. Hyman and APN Novak. (R. 2072 (citing R. 1156-59, 4172)). Thus, while the ALJ was not mandated to accept any and all of this evidence at face value; she permissibly considered all of the evidence and put forth an extensive RFC reflective of Claimant's myriad conditions. 20 C.F.R. §§404.1527(c), 404.1545(c).

The ALJ explained the RFC by thoroughly discussing the opinions of Claimant's treating mental health physicians as well as the agency psychological consultative examiners. Specifically, the ALJ gave significant weight to the 2019 mental RFC opinions offered by Drs. Hudspeth and Voss. (R. 2074-75). As courts of this Circuit have consistently found, an ALJ's reliance upon state agency consultants is permissible and an example of substantial evidence weighing against remand. *See Pavlicek*, 994 F.3d at 784 ("The ALJ's reliance on [state agency consultants'] medical opinions was permissible."); *Delong v. Saul*, 844 Fed.Appx. 894, 900 (7th Cir. 2021) ("[T]he ALJ did not err in relying on the opinions of agency physicians which did not recommend any additional limitations beyond those the ALJ included in his RFC determination."); *Recha v. Saul*, 843 Fed.Appx. 1, 3-4 (7th Cir. 2021); *Meghan S. v. Kijakazi*,

24

No. 20 C 1592, 2021 WL 4146913 at *8 (N.D.Ill. Sept. 13, 2021) ("The ALJ reasonably relied on [the state agency consultants] to translate Meghan's mental impairments into an RFC.").

Claimant's argument fails as she does not point to any additional limitations that would adequately address her mental impairments.  To be clear, the ALJ "*did* include restrictions related to decreased concentration, persistence, and pace.  To the extent that [Claimant] would require specific phrasing," the Seventh Circuit has rejected that approach.  *Morrison v. Saul*, 806 Fed.Appx. 469, 474-75 (7th Cir. 2020); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (noting that "there is no magic words requirement"); *see also Kuykendoll v. Saul*, 801 Fed.Appx. 433, 438 (7th Cir. 2020) (remand not required where the claimant posits no relevant mental limitations the ALJ should have included in the RFC); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (same).  In sum: the ALJ's RFC related to Claimant's mental impairments is supported by substantial evidence and remand is not required on this ground.

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse and remand the Commissioner's decision, (Dckt. #14), is denied and the Commissioner's motion for summary judgment, (Dckt. #19), is granted.


**Date:  October 8, 2023**



**Jeffrey I. Cummings**
**United States Magistrate Judge**

25